UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**NATIONAL CASUALTY COMPANY, ET AL.**

**VERSUS**

**TOM'S WELDING, INC.**

**CIVIL ACTION**

**No. 11-3101**

**SECTION I**

## ORDER AND REASONS

Before the Court is a motion[1] to dismiss filed by defendant, Tom's Welding, Inc. ("Tom's"). Plaintiffs, National Casualty Company ("National") and American Alternative Insurance Company ("American"), have filed an opposition.[2] For the following reasons, the motion to dismiss is **GRANTED**.

### *BACKGROUND*

On September 12, 2011, the M/V REBEL HUSTLER ("the REBEL HUSTLER") operated by Hoang Vo ("Vo") attempted to tow an unnamed barge from Buras, Louisiana, to Crown Point, Louisiana, by way of the Gulf of Mexico.[3] The barge was loaded with a steel I-beam skid that was approximately 100' long by 36" and "very heavy."[4] The skid was loaded to the port side of the barge such that it was hanging over the barge's box end. As a result of the way the skid was loaded, Vo was forced to make up the tow to the rake end of the barge.[5] Although loose steel plates covered a number of the cargo holds, they were not sealed or welded

---

[1] R. Doc. No. 7.

[2] R. Doc. No. 8.

[3] R. Doc. No. 1, at ¶¶ 9, 13, 25.

[4] R. Doc. No. 1, at ¶ 12; R. Doc. No. 8-11, at p. 2.

[5] R. Doc. No. 1, at ¶¶ 18-19.

1

into place.[6] When the tow sailed into the Gulf of Mexico, the barge began listing to port and the port head of the barge eventually went under water.[7] The barge sank approximately three miles off shore in nearly 30 feet of water.[8]

Joe Dardar ("Dardar") owned the barge and its cargo.[9] Along with the steel I-beam skid, the barge was loaded with a 100-ton crane, 400 feet of one-inch steel wire, three 6-inch pumps, and five 3-inch pumps.[10] No attempts have been made to salvage the barge or its cargo.[11]

On September 13, 2011, Tom's reported the incident to its insurance agent, Greg Wheeler, who relayed the message to David Saltaformaggio, an adjuster with G&M Marine ("G&M"), the managing general agent for the insurance policies issued to Tom's by National and American.[12] The insurance companies then hired Shuman Services and Consulting Solutions ("Shuman") to conduct an investigation.[13]

Shuman reports that it received several phone calls from Tom's and Dardar during the course of its investigation.[14] Shuman reports that on September 19, 2011, Dardar informed Shuman that "he is in a real bind and needs to get this taken care of soonest."[15] Dardar informed Shuman that the barge would cost approximately $150,000, the pumps would cost approximately

---

[6] R. Doc. No. 1, at ¶ 21.

[7] R. Doc. No. 1, at ¶¶ 29-31.

[8] R. Doc. No. 1, at ¶ 32.

[9] R. Doc. No. 1, at ¶ 33.

[10] R. Doc. No. 1, at ¶ 33.

[11] R. Doc. No. 1, at ¶ 34.

[12] R. Doc. No. 8-2.

[13] R. Doc. No. 8, at p.3.

[14] R. Doc. No. 8-5, at ¶ 4.

[15] R. Doc. No. 8-4, at p.1.

$65,000-$85,000, and the steel I-beam skid would cost approximately $30,000.[16] Tom's also called to relate its concern that it might not have enough insurance to cover the $300,000 loss.[17] Shuman states that Dardar called again on September 30, 2011, to inquire as to the outcome of his claim.[18]

G&M reports that it also received several phone calls from Tom's and Dardar in connection with the sinking.[19] Saltaformaggio reports that he received several unsolicited phone calls from Tom's over the course of one particular week in December 2011.[20] He claims that Tom's demanded to know how much money his insurance company was going to pay and that he had been in settlement discussions with Dardar concerning the amounts his insurance would not cover.[21] Saltaformaggio also states that he received unsolicited phone calls from Dardar inquiring as to the status of his claim and expressing frustration that it was not being resolved faster.[22] Saltaformaggio attests that "it was my understanding that a claim for coverage had been submitted for the losses incurred by the sinking of the barge."[23]

On December 14, 2011, G&M informed Tom's that coverage for the $300,000 claim for the lost barge and equipment was being denied.[24] After reviewing the policy language and the

---

[16] R. Doc. No. 8-4, at p.2.

[17] R. Doc. No. 8-4, at p.1.

[18] R. Doc. No. 8-4, at p.2.

[19] R. Doc. No. 8-6, at ¶ 6.

[20] R. Doc. No. 8-6, at ¶ 7.

[21] R. Doc. No. 8-6, at ¶ 7.

[22] R. Doc. No. 8-6, at ¶ 8.

[23] R. Doc. No. 8-6, at ¶ 9.

[24] R. Doc. No. 8-11.

circumstances surrounding the loss, G&M determined that Tom's had breached the policy's terms, conditions, exclusions, warranties, and limitations to coverage.[25]

On December 19, 2011, National and American filed this lawsuit for a declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 to determine the respective rights and obligations of the parties under their insurance policy.[26] Plaintiffs contend that the barge sank because Vo acted negligently by: (1) towing an improperly loaded barge; (2) choosing to navigate the tow offshore; (3) towing the barge box-end first; (4) failing to adequately inspect the cargo holds; and (5) failing to adequately cover and secure all of the cargo holds.[27] Plaintiffs seek a judgment declaring that they have no duty to indemnify Tom's in connection with the underlying claim.[28]

On January 17, 2012, Tom's filed this motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the ground that the lawsuit does not implicate an actual case or controversy.[29] Khai Dinh, the owner of Tom's, submitted an affidavit in connection with the motion to dismiss in which he states that Tom's merely reported the incident to its insurance representatives.[30] He attests that Dardar has not yet made any formal demand upon Tom's that would provide a basis for Tom's to file a claim for indemnity from National and American.[31] Dardar also filed an affidavit in support of Tom's motion to dismiss, in which he attests that he is

---

[25] R. Doc. No. 8-11.

[26] R. Doc. No. 1.

[27] R. Doc. No. 1, at ¶ 36.

[28] R. Doc. No. 1.

[29] R. Doc. No. 7.

[30] R. Doc. No. 7-2, at ¶ 3.

[31] R. Doc. No. 7-2, at ¶¶ 5-6.

currently undergoing a refinancing and that he is uncertain whether he has the right to make settlement decisions in this matter.[32] Tom's contends that plaintiffs are seeking a decision with respect to a controversy that does not yet exist in order to artificially create federal jurisdiction over the matter.[33]

### *STANDARD OF LAW*

A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction carries the burden of proof. *Id.* The district court may base its determination as to its subject matter jurisdiction on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

"A motion to dismiss for want of subject matter jurisdiction can take the form of a facial attack on the complaint, requiring the court merely to assess whether the plaintiff has alleged a sufficient basis of subject matter jurisdiction, taking all allegations in the complaint as true." *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). "A factual attack on the subject matter jurisdiction of the court, however, challenges the facts on which jurisdiction depends and matters outside of the pleadings, such as affidavits and testimony, are considered." *Oaxaca*, 641 F.2d at 391 (citing *Menchaca*, 613 F.2d at 511. When the defendant makes a factual attack, "a plaintiff is also

---

[32] R. Doc. No. 12-2, at ¶ 3.

[33] R. Doc. No. 7.

required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

"When a rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States,* 281 F.3d 158, 162 (5th Cir.2001), *cert. denied,* 536 U.S. 960 (2002) (citing *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977)).

## *DISCUSSION*

In *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000), the U.S. Fifth Circuit Court of Appeals identified a three-step inquiry for determining whether to decide or dismiss a complaint for declaratory relief. *See also Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003). The first step requires a determination as to whether the declaratory action is justiciable. *Id.* (citing *Rowan Cos. v. Griffin*, 876 F.2d 26, 27-28 (5th Cir. 1989)). "Second, if it has jurisdiction, then the district court must resolve whether it has the 'authority' to grant declaratory relief in the case presented. *Orix*, 212 F.3d at 895 (citing *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993). "Third, the court has to determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Orix*, 212 F.3d at 895 (citing *Travelers*, 996 F.2d at 778).

### I. Justiciability

It is well settled that a federal court will not have subject matter jurisdiction and "may not issue a declaratory judgment unless there exists an 'actual controversy.' " *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998) (citing *Middle South Energy, Inc. v. City of New Orleans,* 800 F.2d 488, 490 (5th Cir.1986)). "As a general rule, an actual controversy exists

where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests.' " *Orix Credit Alliance*, 212 F.3d at 896 (quoting *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)). Where a controversy is "abstract or hypothetical," an action for declaratory judgment is premature and should be dismissed. *Id.* (quoting *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir.2000)). "A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Griffin*, 876 F.2d at 28 (quoting *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967)).

Tom's argues that this declaratory action does not implicate a justiciable case or controversy because Dardar has not yet made any formal demand upon Tom's that would provide a basis for Tom's to file a claim for indemnity from National and American. However, a formal or informal demand is not a prerequisite for finding a justiciable case or controversy. *Griffin*, 876 F.2d at 28. The Fifth Circuit has recognized that "[t]he threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based." *Orix Credit Alliance*, 212 F.3d at 897. Moreover, "[t]he fact that the filing of the lawsuit is contingent upon certain factors does not defeat jurisdiction over a declaratory judgment action." *Id.* (citing *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir.1992)); *see also Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 61 S. Ct. 510, 85 L. Ed. 826 (1941).

Ultimately, "in determining whether a justiciable controversy exists, a district court must take into account the likelihood that these contingencies will occur." *Orix Credit Alliance*, 212 F.3d at 897 (5th Cir. 2000). "Thus, the ripeness inquiry 'focuses on whether an injury that has

7

not yet occurred is sufficiently likely to happen to justify judicial intervention.' " *Id.* (citing *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993). "Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis." *Orix Credit Alliance*, 212 F.3d at 896 (citing *Mobil Oil Corp. v. Oil, Chem. & Atomic Workers Int'l Union*, 483 F.2d 603 (5th Cir. 1973); 10B Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 2757, at 470 (1984)).

In this case, the parties agree that Dardar's barge and its cargo have sunk, resulting in a substantial loss. Tom's reported the incident to its insurer and, along with Dardar, informally demanded coverage for the loss on several occasions. Tom's argument that the lack of formal demand deprives the Court of jurisdiction overlooks settled Fifth Circuit precedent that a formal or informal demand is not a "sacred requirement" of a justiciable case or controversy. *See Royal Ins. Co. of Am. v. Williams*, No. 90-486, 1991 WL 244902, at *2 (E.D. La. Apr. 29, 1991) (Feldman, J.); *Griffin*, 876 F.2d at 28; *QBE Ins. Corp. v. McFarland*, No. 10-338, 2011 WL 3625308, at *2 (S.D. Miss. Aug. 17, 2011).

Nevertheless, Louisiana law generally provides that until the underlying issue of liability is resolved and the defendant is cast in judgment, the issue of indemnity is premature and non-justiciable. *Coregis Ins. Co. v. Sch. Bd. of Allen Parish*, No. 07–30844, 2008 WL 2325632, at *2-*3 (5th Cir. June 6, 2008) (finding a declaratory action as to an insurer's duty to indemnify dependent on factual development and, therefore, premature and subject to a stay or dismissal without prejudice); *Nat'l Union Fire Ins. Co. v. St. Bernard Parish Gov't*, No. 03–3551, 2004 WL 877379, at *2 (E.D. La. Apr. 21, 2004) (Berrigan, J.) (holding that the plaintiff's duty to indemnify claims were not justiciable); *Seaboard Marine Ltd. v. St. Paul Fire & Marine Ins. Co.*, No. 96-2446, 1996 WL 696354 (E.D. La. Nov. 25, 1996) (Livaudais, J.) (finding a claim for

indemnity premature before a determination of liability); *Couvillion v. James Pest Control, Inc.*, 729 So. 2d 172, 174 (La. Ct. App. 4th Cir. 1999); *Faucheaux v. Prytania Med. Complex Owners Ass'n.*, 642 So. 2d 242, 244-45 (La. Ct. App. 4th Cir. 1994) ("If the plaintiffs lose, there may be no indemnification required . . . . In sum, any decision rendered by this Court at this time would be premature and perhaps an advisory opinion, which we are not permitted to render.").[34] Because the declaratory complaint seeks a ruling only with respect to plaintiffs' obligation to indemnify, it does not present a justiciable case or controversy. *See Coregis*, 2008 WL 2325632, at *2-3; *Travelers Cas. and Sur. Co. v. Univ. Facilities, Inc.*, 2012 WL 1198611, at *10 (E.D. La. 2012) (Vance, J.); *Nat'l Union Fire Ins. Co.*, 2004 WL 877379, at *2. For the following reasons, however, even if plaintiffs have alleged a justiciable case or controversy, this Court declines to exercise its jurisdiction to decide the declaratory action.

## II. Authority to Grant Declaratory Relief

The second element of the *Orix* test is whether the court has the authority to grant declaratory relief. A district court lacks authority to consider the merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under section 2283.[35] *Sherwin-Williams*

---

[34] Although "in cases where the insurer seeks a ruling that it has no duty to indemnify nor a duty to defend, courts have held that there may be an actual controversy even before the state court action proceeds to judgment," *see Colony Ins. Co. v. Pearl River Basin Land & Dev. Co.*, No. 08-5087, 2009 WL 2407956, at *3 (E.D. La. Aug. 4, 2009) (Zainey, J.); *Gabarick v. Laurin Maritime (America), Inc.*, No. 08-4007, 2009 WL 43096, at *7-*8 (E.D. La. Jan. 7, 2009) (Africk, J.) (citing *W. Heritage Ins. Co. v. River Entertainment*, 998 F.2d 311, 312-15 (5th Cir. 1993); *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998)); *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 61 S. Ct. 510, 85 L. Ed. 826 (1941), plaintiffs do not seek a declaration that they have neither a duty to indemnify nor a duty to defend. Plaintiffs request a declaratory judgment only with respect to their duty to indemnify.

[35] 28 U.S.C. § 2283 provides, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

*Co. v. Holmes Cnty*, 343 F.3d 383, 388 n.1 (5th Cir. 2003) (citing *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993)).  In this case, the declaratory defendant, i.e., Tom's, has not previously filed a cause of action in state court.  There are no state court proceedings involving the same issues before this Court and the anti-injunction act does apply at this time.  Therefore, the Court would have authority to grant declaratory relief in this case.

### III. Discretion to Dismiss or Decide Declaratory Action

"The Declaratory Judgment Act, 28 U.S.C. § 2201(a), 'is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant.' " *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S. Ct. 2137, 2143, 132 L. Ed. 2d 214 (1995)).  In *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir.1994), the Fifth Circuit enumerated the following seven nonexclusive factors for a district court to consider in deciding whether to decide or dismiss a declaratory action:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> (5) whether the federal court is a convenient forum for the parties and witnesses;
>
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and

> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*See also Vulcan Materials Co. v. City of Tehuacana,* 238 F.3d 382, 390 (5th Cir. 2001); *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.,* 996 F.2d 774, 778 (5th Cir. 1993). The *Trejo* factors assist the Court in assessing the proper allocation of decision-making between state and federal courts, distinguishing between legitimate and improper reasons for forum selection (fairness), and in achieving an efficient resolution of the dispute. *Sherwin-Williams*, 343 F.3d at 390-91.[36]

The first and seventh *Trejo* factors address the proper allocation of decision-making between state and federal courts. With respect to the first factor, the Fifth Circuit has explained that "if the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit." *Sherwin-Williams*, 343 F.3d at 390-91. However, the absence of a pending parallel state proceeding does not automatically require a district court to decide a declaratory judgment action, as such a *per se* rule would be inconsistent with the court's discretionary authority. *Id.* at 394. In fact,"[i]t is a well established practice in this district to dismiss such pre-emptive declaratory judgment actions in maritime personal injury cases," even when the real plaintiff has not yet filed a state or federal court action. *See In Matter of Complaint of T. Baker Smith & Son, Inc.*, 1998 WL 151435, at *4-*5 (E.D. La. Mar. 25, 1998) (Vance, J.). As a result, while the fact that neither Dardar nor Tom's has filed a state court action may "strengthen[] the argument against dismissal of the

---

[36] District courts must assess the seven *Trejo* factors on the record before dismissing a declaratory judgment action. *Vulcan*, 238 F.3d at 390; *Trejo*, 39 F.3d at 590 ("[U]nless the district court addresses and balances the purposes of the Declaratory Judgment Act and the factors relevant to the abstention doctrine on the record, it abuses its discretion.").

11

federal declaratory judgment action," the lack of a state court action is not dispositive. *Sherwin-Williams*, 343 F.3d at 394. The seventh factor applies in a similar manner as this Court is not being called on to construe a state judicial decree involving the same parties.

The second, third, and fourth factors address "fairness" concerns with respect to forum selection and they help to determine whether the plaintiff is using the declaratory action process "to gain access to a federal forum on improper or unfair grounds." *Sherwin-Williams*, 343 F.3d at 391. With respect to the second factor, it is readily apparent that plaintiffs filed this action in anticipation of a lawsuit being filed by Tom's and/or Dardar. Plaintiffs filed this lawsuit only five days after informing Tom's that coverage was being denied for the incident. As for the third factor, plaintiffs do not appear to have brought this lawsuit for an improper purpose such as to "race to *res judicata*," shop for a new forum, deprive Tom's of a jury trial, or to search for more favorable law. *See Sherwin-Williams*, 343 F.3d at 399. On the other hand, this is not a case where plaintiffs are faced with multiple state court actions such that a declaratory judgment by one federal district court would provide a more efficient resolution to the various claims. *See id.* (citing *Travelers*, 996 F. 2d at 777). Moreover, given the extremely short period of time between the denial of coverage and the filing of this declaratory judgment action, the fourth factor suggests that possible inequities may exist in allowing plaintiffs to gain precedence in time and to choose the forum. *See Aries Marine Corp. v. Lolly*, No. 05-1883, 2006 WL 681184, at *3 (W.D. La. Mar. 16, 2006) (Melancon, J.) (citing *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir. 1966); *Peteet v. Dow Chemical Co.,* 868 F.2d 1428, 1436 (5th Cir. 1989)).

The fifth and sixth *Trejo* factors fall under the efficiency category. A federal district court must consider efficiency and "avoid duplicative or piecemeal litigation where possible." *Sherwin*, 343 F.3d at 391. Although there is no suggestion that this court presents an

inconvenient forum for the parties, the sixth factor, whether retaining the lawsuit would serve the purposes of judicial economy, strongly favors dismissal.  If Dardar or Tom's eventually file a state court action, plaintiffs will be free to raise any coverage defenses in that action. Moreover, resolving the issues raised by this declaratory judgment action may ultimately be unnecessary as it is not entirely clear whether Dardar will file a lawsuit and, if so, whether he will succeed.

In summary, while there is no state lawsuit currently pending, the potential for allowing plaintiffs to obtain a federal forum on unfair grounds along with the need to achieve an efficient resolution of this dispute favors dismissal of this declaratory judgment action.  Considering the proper allocation of decision making between federal and state courts, fairness, and efficiency, even if this matter presents a justiciable case or controversy, the Court declines to exercise its discretion to decide the declaratory judgment action as the balance of the *Trejo* factors weighs in favor of dismissal of this lawsuit.

## *CONCLUSION*

For the foregoing reasons,

**IT IS ORDERED** that the motion to dismiss is **GRANTED**, and plaintiffs' complaint is **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, June 6, 2012.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**